UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SHARON GIBSON DAVIS, | : | |
|      Plaintiff, | : | |
| | : | |
|     v. | : | C.A. No. 16-141S |
| | : | |
| NANCY A. BERRYHILL, ACTING | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
|     Defendant. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This matter is before the Court on Plaintiff's motion to reverse the Commissioner's decision denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"). Plaintiff contends that the Administrative Law Judge ("ALJ") erred in finding that, excluding substance abuse disorder, she has no severe mental impairments. Defendant Nancy A. Berryhill ("Defendant") has filed a motion for an order affirming the Commissioner's decision. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that the ALJ's findings are sufficiently supported by substantial evidence and recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) be GRANTED.

I.     **BACKGROUND**

    A.     **Plaintiff's History**

Plaintiff is a woman "closely approaching advanced age" in Social Security parlance. She was born in North Carolina and raised by an aunt; her family history is characterized by substance abuse affecting her brothers, sisters, aunts, uncles and possibly her mother. Tr. 676. She moved to Rhode Island at the age of thirty-one. Tr. 738. Over the years, she got her GED and an associate's degree at Community College of Rhode Island, worked as an administrative assistant and child care worker, married, divorced and had three now-adult children. Tr. 642, 738. She continued her education at Rhode Island College but did not complete a degree because of difficulty concentrating and "drinking." Tr. 676. Medical sources describe her as a "very intelligent," educated woman. Tr. 643, 734. While she claims onset of disability on November 15, 2010, she appears to have worked through 2011, earning over $10,000 that year. Tr. 374.

Plaintiff complains of a range of mental disorders that are relevant to her claim of disability. She also alleged physical impairments, including back pain, arthritis in the knee, diabetes, high blood pressure, high cholesterol and GERD. Only the left knee was found to be severe at Step Two; it formed the basis for the ALJ's finding that Plaintiff is physically limited to the full range of sedentary work. Tr. 19. The physical impairments are not pertinent to the matters at issue on this appeal; they will not be discussed further in this report and recommendation

First, the treating record reflects diagnoses of depression and post-traumatic stress disorder ("PTSD"). These diagnoses were endorsed by Plaintiff's longtime treating psychiatrist, Dr. Jamil Chaudhry of The Providence Center whom she saw from Spring 2009 until she moved back to North Carolina at the end of 2011. Tr. 681-702, 871-76. Notwithstanding these diagnoses, aside from periods of alcohol relapse, Dr. Chaudhry's notes generally reflect an

absence of, or mild, symptoms apart from the urge to drink. E.g., Tr. 683 ("she has been stable . . . [r]eports good mood, sleep, appetite, energy level"); Tr. 693 ("stable . . . [r]eports good mood, though feels depressed at times . . . had urges a couple of times to drink alcohol . . . good energy . . . anxiety symptoms well controlled"). In his psychiatric evaluation, Dr. Chaudhry considered Plaintiff's report that she hears a voice calling her name once every two months; he opined that "[i]t does not seem that patient is having auditory or visual hallucinations," noting that "she thinks [voices] may be her own thoughts." Tr. 739. Similarly, between relapses during her stay in North Carolina in 2012 and 2013, her diagnoses were depression and anxiety (and alcohol dependence); except during relapse-related treatment, her mental status was essentially normal, with depression appropriate to "her situation." Tr. 992. When she returned to Rhode Island in the spring of 2014, she resumed mental health treatment at CCAP, initially during an alcohol relapse, but then continued treating for depression. Tr. 1017, 1070. CCAP's treating note of July 30, 2014, reflects that she had been sober for five days, yet the mental status examination resulted in observations of normal memory, normal attention and concentration, and appropriate mood and affect. Tr. 1070.

Plaintiff's other, far more serious, mental health complaint is that she has hallucinations, hears voices, has an invisible friend named Gloria who tells her things, is bipolar and psychotic and has schizophrenia. In addition, Plaintiff claims to have a grossly impaired memory and ability to concentrate, as well as marked impairment in basic functions such as activities of daily living. Medical record references to these symptoms and diagnoses appear most frequently in Plaintiff's self-reports. For example, after Plaintiff was referred to The Providence Center "by a SSI lawyer," Tr. 676, during the initial assessment, she told staff that she had been treated for bipolar disorder in the past, that she hears voices and sees shadows, all of which affect her ability

to focus enough to work.  Tr. 676-77; <u>see</u> Tr. 1024 ("Ct reports dx of Bipolar, PTSD, schizophrenia & depression 4 yrs ago").

Much of the medical record makes no reference to, and even rules out, these serious symptoms and diagnoses.  <u>See, e.g.</u>, Tr. 504, 523 (during Miriam Hospital stay for knee surgery, mental status normal except for history of anxiety); Tr. 655-58 (during Roger Williams Hospital stay for detox, mental status normal, including mood and affect; diagnosis depression); Tr. 898 (during post-detox treatment at Daymark Recovery Services following alcohol and cocaine relapse, no psychotic symptoms noted; diagnosis mood disorder and PTSD); Tr. 917 (during treatment at Daymark for detox, staff note "[a]ble to handle ADL's without assistance"); Tr. 982-87 (during treatment at Daymark following alcohol relapse, staff note "not delusional or psychotic," "memory is intact . . . [a]ttention span and concentration appear normal"); Tr. 1071 (despite only five days without alcohol, observations during physical examination at CCAP include "Appropriate mood and affect . . . Normal attention span and concentration").  Further, despite her report of hearing voices, no treating provider recorded schizophrenia as a diagnosis. As noted, Dr. Chaudhry concluded that the voice she claimed to hear did not reflect hallucinations or delusions but rather amounted to listening to her own thoughts.  Tr. 699 ("She reports now that she feels that the random voices that she has heard in the past may be her own thoughts.").  Similarly, during an appointment at St. Joseph's Mercy Care, Plaintiff claimed that she talks with her imaginary friend Gloria and reported prior diagnoses of schizophrenia and bipolar.  However, this history was contradicted by the findings on clinical examination – "Ct reports a dx of Bipolar DO though Bipolar was not indicated by MDQ."  Tr. 1026.

Not emphasized (and sometimes omitted) by Plaintiff in connection with her disability application is substance abuse disorder, principally abuse of alcohol and occasionally cocaine (at

times, crack cocaine).  Throughout the period of alleged disability, Plaintiff had periods of

sobriety punctuated by alcohol and occasional cocaine relapses, several serious enough to require

hospitalization.  See Tr. 648 (January 2011 hospitalization for alcohol detox); Tr. 689-90

(September 2010 alcohol relapse results in nightmares and hearing voices and sounds); Tr. 715

(October 2010 alcohol relapse); Tr. 846 (September/October 2011 hospitalization for alcohol

detox); Tr. 854 (September 2011, comes to emergency room while drunk); Tr. 903 (February

2012, residential treatment for alcohol and crack cocaine); Tr. 1009 (November 2013, hospital

referral to treatment facility for alcohol and cocaine); Tr. 1017 (intoxicated at June 2014

appointment on return to Rhode Island).  By the end of the period reflected in the medical record,

there is a reference to "liver injury from etoh abuse."  Tr. 1072.

### B.    Procedural History and Opinion Evidence

This is not Plaintiff's first disability application.  Her first, filed on May 7, 2008,

ultimately claimed disability onset of January 1, 2010.  The ALJ found that depression and

PTSD were severe impairments but that Plaintiff retained the RFC[1] to perform light work limited

to uncomplicated tasks with breaks every two hours, which was found to be sufficient to support

a finding of not disabled.  Tr. 70, 72.  Based on medical evidence establishing that Plaintiff had

been sober for two years and was living in a sober house, the ALJ did not find that substance

abuse disorder was severe at Step Two.  Tr. 73.  The prior ALJ decision issued on October 29,

2010; it does not appear that Plaintiff took an appeal.

The current application was filed on August 16, 2011, alleging onset on November 15,

2010.  Soon after it was filed, Dr. Chaudhry submitted a form opining that depression and PTSD

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

preclude employment apart from substance abuse; however, the form provides no information about the impact of these impairments on functionality, beyond the conclusory opinion that Plaintiff could not work. Tr. 995. The ALJ afforded it minimal probative weight. Tr. 17.

Next, psychologist, Dr. Steven Salmony, an SSA expert, reviewed the record and opined that, despite depression, PTSD and active substance abuse, Plaintiff could still perform uncomplicated tasks with brief social interactions, as well as that "she appears to have exaggerated some of her limitations in regards to memory, so in that regard[] she is not fully credible." Tr. 96, 111. On reconsideration, the file was reexamined by another psychologist, Dr. Tovah Wax; she noted the many references to stable symptoms despite diagnoses of depression, PTSD and active substance abuse. Tr. 132. She concluded that Plaintiff would be able to work in a low stress environment with minimal interpersonal demands and that substance abuse impacts her mental functioning but "does not seem to be material at this time." Tr. 132-35; Tr. 157-60. Dr. Wax specifically opined that there was insufficient evidence to substantiate Plaintiff's claim of "schizophrenic, paranoid, and other psychotic disorder." Tr. 133, 158.

At the time of Dr. Salmony's review (February 2012) and Dr. Wax's review (June 2012), the file under review reflected that Plaintiff had been working during 2011 (albeit at less than SGA levels), had been treating with Dr. Chaudhry, who recorded mostly stable mood and no hallucinations or delusions, as well as at Daymark Recovery,[2] which recorded that she had been sober for seven years before the recent relapse, that she was "able to handle ADLs without assistance" and that she had been looking for a job prior to the recent relapse. Tr. 372, 681-702, 898-917. Neither Dr. Salmony nor Dr. Wax had access to the later records from Daymark, which refer to relapses involving alcohol and cocaine, Tr. 982; from Peachford Behavioral

---

[2] It appears that Daymark is in North Carolina, although no definitive reference establishing its location was found in the record.

Health System, which refer to Plaintiff's inability to quit drinking on her own, Tr. 1009; from CCAP, which refer to her presentation as "intoxicated and sobbing," and to alcohol-related liver damage, Tr. 1017, 1070. Nor did they see such records as those linking Plaintiff's cover-up of substance abuse and her complaints of serious mental health issues, as those from St. Joseph's Mercy Care Services, which refer to a claimed history of diagnoses of schizophrenia and Bipolar and to Plaintiff's disingenuous denial of alcohol or cocaine use. Tr. 1024. Noting that the analyses by the non-examining state agency psychologists are not supported by the totality of the medical record when substance abuse is excluded from consideration, the ALJ afforded minimal weight to the opinions of Drs. Salmony and Wax. Tr. 17.

On August 7, 2014, the ALJ conducted the first of two hearings. She heard testimony from a medical expert with no expertise in mental health regarding Plaintiff's mild and minimal physical impairments. Tr. 60. Because of Plaintiff's testimony that she was experiencing serious mental health symptoms, including nightmares, flashbacks and hallucinations about her imaginary friend, Gloria, Tr. 48-50, 52-59, the ALJ arranged to procure a psychiatric consultative examination and to convene a second hearing after it was completed.

In the gap between the two hearings, Plaintiff submitted substance abuse materiality and RFC opinions from Dr. Constance Calvert of Daymark Recovery; these were signed on August 15, 2013. Tr. 974. Dr. Calvert had seen Plaintiff only twice as of the date of the opinions. Tr. 982-84. At the first appointment with Dr. Calvert, Plaintiff had suffered a recent alcohol and cocaine relapse due to stress arising from family pressures and a troublesome reunion with a former boyfriend; Dr. Calvert diagnosed depression and anxiety, but that Plaintiff was "not delusional or psychotic." Dr. Calvert assessed a GAF[3] score of 55, reflecting moderate

---

[3] The GAF scale was omitted from the most recent update to the Diagnostic and Statistical Manual of Mental Disorders because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'"

symptoms, and prescribed medication.  Tr. 982.  At the second appointment, Dr. Calvert noted

that "[t]his patient is doing better . . . much better since getting back on her medicine"; the

mental status examination was normal.  Tr. 984.  Nevertheless, in her opinion written a few days

later, Dr. Calvert opined that Plaintiff's depression and anxiety are disabling apart from

substance abuse, as well as that Plaintiff suffers moderately severe limitations in her ability to

engage in social activities like going to church, responding to supervisors and coworkers or

performing complex tasks.  Nothing in the treatment record suggests that Dr. Calvert had any

information about Plaintiff's social or work history or educational background.

The consulting examination requested by the ALJ was performed by a psychologist, Dr.

Tracey Tevyaw, on August 25, 2014.  During the appointment, Plaintiff told Dr. Tevyaw that

"[t]he doctor said I was bipolar and sometimes my friend Gloria who talks to me and no one sees

her."  Tr. 1039.  She claimed not to know the time of the appointment or when she arrived and

misstated her own age, height and weight.  Tr. 1039, 1049.  Other information provided to Dr.

Tevyaw appears to be false: for example, she denied substance abuse problems in her family,

which contrasts markedly with what she told treatment providers, Tr. 676, and stated that she did

not go beyond the tenth grade in school, which contrasts with her established history as having a

GED, an associates degree and failing to complete her bachelor's degree because of drinking, Tr.

642, 676, 1040.  Most importantly, Plaintiff "reported little to no alcohol use" to Dr. Tevyaw –

Dr. Tevyaw specifically noted that "she . . . denied any problems related to alcohol use."  Tr.

1042, 1047.  When asked to explain a medical record that mentioned a request for alcohol detox,

---

Santiago v. Comm'r of Soc. Sec., No. 1:13-cv-01216, 2014 WL 903115, at *5 n.6 (N.D. Ohio Mar. 7, 2014) (citing
Diagnostic and Statistical Manual of Mental Disorders at 16 (5th ed. 2013) ("DSM-5")).  Nevertheless, adjudicators
may continue to receive and consider GAF scores.  SSA Admin. Message 13066 at 2-6, available at
http://www.nysba.org/WorkArea/DownloadAsset.aspx?id=51489 (starting at p.19 of PDF document) (last visited
Aug. 8, 2017).

she told Dr. Tevyaw, "I didn't want to start up drinking heavy – maybe they worded it the wrong way." Tr. 1042.

In reliance on this foundation, Dr. Tevyaw diagnosed "unspecified schizophrenia spectrum and other psychotic disorder, as well as PTSD," resulting in the opinion that "claimant would have very significant difficulty in obtaining or maintaining gainful employment." Tr. 1050-51. She did not diagnose substance abuse disorder.

With the Calvert opinion and the Tevyaw report in hand, the ALJ decided to call a medical expert at the second hearing; this testifying expert is Dr. Stuart Gitlow, a board certified psychiatrist and addiction specialist. Tr. 15. During his testimony, Dr. Gitlow provided his analysis of the medical record, noting both Plaintiff's extended and pervasive history of substance abuse, including her frequent need for in-patient detox. Tr. 35-38. He also pointed out the many prescriptions for benzodiazepine, Ativan and Ambien, resulting in the absence of an extended period of sobriety when Plaintiff was using neither alcohol nor a medication that is contra-indicated for an individual who has a history of alcohol abuse disorder. Tr. 36, 39-40.

Based on his file review and a brief set of questions directed to Plaintiff, Dr. Gitlow opined that, "there is no opportunity in the record to make a diagnosis or for the record to establish a primary diagnosis such as psychosis, not otherwise specified, or schizophrenia or anything along those lines." Tr. 36. Because substance abuse symptoms emulate symptoms of psychiatric disease, he explained that one cannot rule in a mood or psychotic disorder when dealing with an individual like Plaintiff, who has consistently been either on contra-indicated prescription drugs or abusing substances. Tr. 41. Further, even when on these prescription medications, but otherwise clean and sober, Plaintiff's mental status exams were largely normal, including no hallucinations or visions. Tr. 37. In reliance on these observations, Dr. Gitlow

opined that Plaintiff suffered from marked functional limitations when actively abusing substances and no more than mild limitations when not.  Tr. 38.

During his testimony, Dr. Gitlow explained his perspective on the difference between his opinion and that expressed by Dr. Tevyaw:

> [W]hen [Plaintiff] was asked [by Dr. Tevyaw] what her substance use history was the claimant reported that she had a past history of drinking more heavily when she was younger, but she denied any problems related to alcohol use and really minimized the fact that she had been in recovery programs and had been through several detoxes and so forth."

Tr. 36-37.  As a result, as Dr. Gitlow observed, Dr. Tevyaw "was not fully aware of the extent to which [Plaintiff's] alcohol use disorder had been pervasive over the preceding years."  Tr. 37.

## II.      TRAVEL OF THE CASE

Plaintiff protectively filed her applications for DIB and SSI on August 16, 2011, alleging disability beginning November 15, 2010.  Tr. 357-69.  The Commissioner denied the applications initially and upon reconsideration, Tr. 83-174, 177-209, and Plaintiff requested an administrative hearing, Tr. 210-11.  After two hearings, the ALJ issued a decision finding that Plaintiff would have the capacity to work if she stopped abusing substances.  Tr. 6-28.  The Appeals Council denied Plaintiff's request for review, Tr. 1-3, rendering the ALJ's decision final.  Plaintiff has exhausted her administrative remedies, and this case is now ripe for judicial review under 42 U.S.C. § 405(g).

## III.     ISSUES PRESENTED

Plaintiff's motion for reversal rests on the argument that the ALJ erred in disregarding the opinions of the state agency reviewing psychologists, the examining psychologist and the two treating physicians and in concluding that Plaintiff does not have a severe mental impairment in the absence of substance abuse.

## IV.    STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical

evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20

C.F.R. §§ 404.1529(a); 416.929(a).[4]

## V.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe,

making the claimant unable to do previous work, or any other substantial gainful activity which

exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.    Five-Step Analytical Framework

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §

404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or

combination of impairments that significantly limit physical or mental ability to do basic work

activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. §

401.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's

impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. §

404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past

work) prevent doing other work that exists in the local or national economy, a finding of disabled

is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at

---

[4] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and
SSI.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity,
the Court hereafter will primarily cite to one set of regulations only.  See id.

Steps One through Four, but the Commissioner bears the burden at Step Five. <u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims). That is, once the ALJ finds that a claimant cannot return to the prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the local or national economy. <u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001). To meet this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989).

### B.   Treating Physicians and Other Sources

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. <u>See</u> <u>Rohrberg v. Apfel</u>, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. <u>Konuch v. Astrue</u>, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. <u>See</u> <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. <u>See</u> <u>Sargent v. Astrue</u>, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must

nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2). If a treating source is not accorded controlling weight, the ALJ must apply the factors listed in 20 C.F.R. § 404.1527(c). As SSR 96-2p provides:

The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR 96-2p, 1996 WL 374188 (July 2, 1996). The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). However, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical findings and other evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(d). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity ("RFC"), see 20

C.F.R. §§ 404.1545-1546, or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

    **C.**    **Substance Abuse**

In 1996, Congress amended the Act to deny disability benefits if alcohol or drug abuse comprises a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C); Brown, 71 F. Supp. 2d at 29; 20 C.F.R. § 404.1535(b). If the claimant is under a disability and there is medical evidence of alcoholism or substance addiction, the ALJ must determine the impact of the addiction on the claimant's disability. See 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a). "The 'key factor' to be considered, in fact the only factor mentioned in the regulations, is whether the claimant would still be disabled absent the drug addiction or alcoholism." Brown, 71 F. Supp. 2d at 35; see also 20 C.F.R. § 404.1535(b)(1). Effective on March 22, 2013, a new policy interpretation issued clarifying how the Commissioner determines whether drug addiction and alcoholism is material to the finding that a claimant is disabled, requiring that benefits be denied. SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013).

The ALJ must first conduct the five-step inquiry taking into account all impairments, including drug and alcohol addiction. Brown, 71 F. Supp. 2d at 29. If the ALJ finds the claimant is not disabled, the process ends. SSR 13-2p, 2013 WL 621536, at *10; Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003); Williams v. Barnhart, 338 F. Supp. 2d 849, 862 (M.D. Tenn. 2004). If the ALJ finds the claimant disabled, the analysis "must go one step further" and determine whether the claimant would still be disabled if the claimant stopped abusing drugs or alcohol. Brown, 71 F. Supp. 2d at 35. Congress mandated the extra step because "it is important . . . not to have the Social Security System subsidize [substance abuse]."

Id. at 29. An impairment caused by past substance abuse may be considered disabling only if the impairment remains after the claimant stops substance abuse. Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000); Hamison v. Halter, 169 F. Supp. 2d 1066, 1069 (D. Minn. 2001).

The question of materiality of drug addiction or alcoholism is reserved to the Commissioner. Ambrose v. Astrue, No. 07-84-B-W, 2008 WL 648957, at *5 (D. Me. Mar. 5, 2008). The Commissioner may base the materiality finding on record evidence during periods of sobriety. Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 126-27 (2d Cir. 2012); Schell v. Astrue, 2012 WL 745024, at *6 (D. Mass. Mar. 7, 2012); see also Vester v. Barnhart, 416 F.3d 886, 891 (8th Cir. 2005) (Commissioner may find that claimant is not disabled if Commissioner is presented with evidence that claimant has demonstrated ability to work during periods of sobriety). When the claimant never achieves sobriety, the materiality determination will necessarily be hypothetical and therefore more difficult; the claimant cannot avoid a finding of no disability simply by continuing substance abuse. SSR 13-2p, 2013 WL 621536, at *9; Evans v. Astrue, CA 11-146S, 2012 WL 4482354, at *2 (D.R.I. Sept. 26, 2012).

## VI.  ANALYSIS

In his decision, the ALJ found that Plaintiff's arthritis in the left knee and substance abuse (cocaine and alcohol) were severe impairments and that substance abuse disorder met the criteria in the relevant Listing, resulting in a finding of disability. Tr. 13-14. Pursuant to 20 C.F.R. § 404.1535, the ALJ then returned to Step Two and found that if Plaintiff stopped abusing drugs and alcohol, she would still have a severe left knee impairment, but would not have any severe mental impairments; therefore, she would retain the RFC to perform the full range of sedentary work, including past relevant work as an administrative assistant. Tr. 20. Plaintiff contends that this determination is error because the ALJ's finding is based only on Dr. Gitlow's

opinion and because the ALJ ignored what Plaintiff contends is substantial evidence from other sources, including the examining psychologist, Dr. Tevyaw, the non-examining psychologists, Drs. Salmony and Wax, and the treating physicians, Drs. Chaudhry and Calvert.

The first flaw in Plaintiff's argument is that the ALJ did not ignore any of these sources. To the contrary, the ALJ evaluated each such source and afforded each specified weight for articulated reasons. Also unavailing is Plaintiff's argument that Dr. Gitlow's opinion cannot amount to substantial evidence because it is improperly based on the lack of a sustained period of sobriety, contrary to the recent guidance in SSR 13-2p, which makes clear that the absence of sobriety does not compel a finding of no disability due to the materiality of substance abuse. 2013 WL 621536, at *4 ("There does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability."). The argument fails because Dr. Gitlow based his opinion on his examination of the records reflecting Plaintiff's largely normal mental status during periods when, despite use of contraindicated medications, she was not actively drinking and using cocaine ("clean and sober"). Tr. 37 ("[M]ental status exam[ination]s . . . are normal. They don't indicate any problems with hallucinatory or, or visions or anything along those lines."). I find no error – Dr. Gitlow's testimony is consistent with the analytic framework established in SSR 13-2p.

Recognizing that the ALJ may choose to accept one medical opinion over another, as long as the other is not a treating source entitled to controlling weight, Machado v. Astrue, C.A. No. 09-045A, 2009 WL 3837226, at *12 (D.R.I. Nov. 13, 2009), the remaining issues for this Court's consideration are whether the opinion of a testifying expert like Dr. Gitlow qualifies as substantial evidence on which the ALJ may rely to the exclusion of other sources and whether the opinions of Drs. Chaudhry and Calvert were sufficiently buttressed by clinical techniques and

consistent with the other evidence that they should have been deemed to be controlling.  The guiding principles that control the first issue are set out in Torres v. Secretary of Health and Human Services, 870 F.2d 742, 744 (1st Cir. 1989); see Rodriguez v. Sec'y of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989) ("whether the testimony of a medical advisor who reviews the record and testifies at the hearing can itself alone constitute substantial evidence varies with the circumstances, including the nature of the illness and the information provided to the advisor") (citation omitted).  Torres holds that whether a medical expert's testimony qualifies as substantial evidence that may be relied upon despite inconsistent opinions from other sources, including examining sources, depends on the circumstances of the particular case, as viewed by focus on four factors.  870 F.2d at 744.

First, the medical advisor must testify and be subject to cross examination.  Id.  Here Dr. Gitlow did testify and was cross-examined; therefore, this factor weighs in favor of a finding of sufficiency.  Second, the weight to be afforded to a testifying expert opinion varies depending on the illness and the information provided to the expert.  Id.  Where, as here, the illnesses are substance abuse disorder and mood and anxiety disorders and, Dr. Gitlow is a psychiatrist and addictive disease specialist with the requisite expertise who provided testimony based on his review of the entire file, as well as on the answers to his own questions directed to the claimant, this factor also tips in favor of a finding of sufficiency.  Third, the Circuit noted that the ALJ should not rely solely on the medical advisor's testimony.  Id.  This factor leans toward a finding of sufficiency in that the ALJ looked not just to Dr. Gitlow, but also relied on a detailed analysis of the medical evidence.  And, fourth, the court should consider the degree of harmony between the opinion of the medical advisor and those of the examining physicians or of other medical sources whose opinions are worthy of significant probative weight.  Id.  Analysis of this fourth

<u>Torres</u> factor requires the Court to examine the degree to which the other opinions to which Plaintiff points were entitled to significant weight and, for those that may be so entitled, the degree to which the well-founded conclusions in them clash with the findings of Dr. Gitlow.

Plaintiff's counter argument may be briefly summarized. Her principle contention is that the ALJ improperly afforded minimal probative weight to both of the file-reviewer psychologists (Drs. Salmony and Wax), who opined that depression/anxiety are severe at Step Two. The ALJ also, wrongly according to Plaintiff, afforded minimal weight to the opinion of the consulting psychologist, Dr. Tevyaw, who concluded that Plaintiff has unspecified schizophrenia spectrum and other psychotic disorder. And Plaintiff challenges the ALJ's discounting of the opinions of the treating physicians, Dr. Chaudhry and Dr. Calvert,[5] both of whom opined that Plaintiff has disabling mental deficits (depression and anxiety or PTSD) and that substance abuse is not a material cause. Plaintiff posits that these errors are material: if the ALJ had properly considered these opinions, he would have given less weight to Dr. Gitlow under <u>Torres</u>. Moreover, if the ALJ had found that depression and anxiety are "severe" mental impairments, resulting in an RFC for simple repetitive tasks, which she contends would be consistent with the non-examining opinions (and with the findings of the ALJ on the prior application (Tr. 70-72)), such a limitation would have precluded Plaintiff from working as an administrative assistant, which is a semi-skilled position. Tr. 63. The limitation to sedentary work[6] caused by Plaintiff's physical limitations would have resulted in a finding of "disabled" under the Medical-Vocational Guidelines. <u>See</u> 20 C.F.R. § 404, Subpt. P, App 2, Rule 201.06.

---

[5] It is not clear whether Plaintiff contends that these treating sources were entitled to controlling weight. Affording her the benefit of the doubt, my analysis assumes that she does take that position.

[6] The 2010 decision, which found that depression and anxiety were severe, did not include a limitation to sedentary work caused by the knee impairment; rather, it reflects a finding of not disabled based on the ability to perform light work. Tr. 70, 72. The degradation in the condition of the knee by 2014 led to the sedentary finding in the ALJ decision under review in this case. Tr. 19.

Plaintiff's argument relies principally on the opinions of the two non-examining psychologists, Drs. Salmony and Wax, who opined that the totality of Plaintiff's mental impairments – including both substance use and anxiety/affective disorders – caused Plaintiff to be moderately limited in that, at most, she could perform simple, routine and repetitive work in a limited social environment. Tr. 99-101, 114-16, 138-40, 163-65. Because their opinions did not result in a finding of "disabled," a determination of the materiality of Plaintiff's substance abuse was not required. Tr. 103, 118 ("DAA is involved, but is NOT material"); Tr. 144, 169 ("Substance abuse is documented, but DAA material determination is not required."). Plaintiff contends that these mental health limitations are materially inconsistent with Dr. Gitlow's opinion so that, under Torres, the Gitlow opinion cannot stand alone. There are two significant differences between these opinions and that of Dr. Gitlow. First, Dr. Gitlow found that substance abuse was so pervasive as to be disabling, while the non-examining psychologists found that it was present but not disabling or material. Second, both of the 2012 file reviewers found that the diagnosed impairments of anxiety and affective disorder were severe for purposes of Step Two, while Dr. Gitlow examined the periods when Plaintiff was clean and sober and observed only mild functional limitations, resulting in his non-severe finding at Step Two.

Careful examination of the record makes plain that these differences do not reflect material inconsistencies but rather are largely the product of the passage of time, during which the seriousness and dominance of substance abuse became more and more obvious. That is, the reviewing psychologists were not aware of the exacerbation of substance abuse during the period after they performed their analysis, while Dr. Gitlow had access to the entire file and to Plaintiff herself at the hearing. Further, Dr. Gitlow had access to the records reflecting Plaintiff's attempts to minimize or cover-up substance abuse while reporting serious mental health

symptoms.  See, e.g., Tr. 1024 (St. Joseph's Mercy Care Services treating record); Tr. 1039 (Dr. Tevyaw's consultative examination report).  Demonstrating the impact of timing, Dr. Salmony opined in February 2012, before the serious sequence of relapses that occurred in 2012 and 2013, as well as before Plaintiff is recorded as abusing cocaine.  He did not even find that substance abuse was a severe impairment.  By the time of Dr. Wax's file review only four months later, in June 2012, things had changed and substance abuse (of both drugs and alcohol) had emerged as serious enough for Dr. Wax to opine that it was severe: "SA is noted to have an impact of clmt's mental functioning, but does not seem to be material at this time."  Tr. 135.  Dr. Gitlow opined more than two years after that, in October 2014; by the time of his file review, the pervasiveness and obviousness of substance abuse had become so significant as to cause him to opine that substance abuse was disabling and that, if substance abuse was excluded, Plaintiff's ability to function was only mildly impacted by the other documented mental conditions.

When the differences between the file reviewed by the non-examining psychologists and the file reviewed by Dr. Gitlow are taken into consideration, the material distinctions among the opinions fall away; while some inconsistencies remain, I find that they are more consistent than not.  Therefore, I find no error in the ALJ's determination to afford the 2012 opinions minimal weight "when [Plaintiff's] substance abuse is excluded from consideration."  Tr. 17.  Further, for purposes of the fourth Torres factor, I find that the Salmony/Wax opinions do not undermine the ALJ's reliance on Dr. Gitlow.

The Court need not linger long over Plaintiff's argument that the ALJ erred in affording minimal weight to the opinion offered by Dr. Tevyaw, the consultative examining psychologist.  Dr. Tevyaw's diagnosis of "unspecified schizophrenia and psychotic disorder" is unsupported by any treating source.  Further, as Dr. Gitlow noted, Plaintiff covered up her substance abuse

during the clinical interview with Dr. Tevyaw; accordingly, the opinion is based on a foundation of dissembling. Plaintiff does not try to shore up this flaw in Dr. Tevyaw's report. I find no error in the ALJ's decision to afford it minimal weight. Nor is there error in the ALJ's failure to elevate it over the opinion of Dr. Gitlow.

Last, I find no error in the ALJ's decision to afford minimal weight to the two treating sources, Dr. Chaudhry, who was the treating psychiatrist until the end of 2011, and Dr. Calvert, who was a treating source from July 2012 until July 2013. Tr. 974, 995. The ALJ explained the reason for discounting their opinions: both are markedly different from the medical record. Tr. 17. Dr. Chaudhry's opinion is contradicted by his own notes, which reflect normal mental status exams during periods where Plaintiff abstained from alcohol use. Similarly, Dr. Calvert's opinion is inconsistent with her notes reflecting largely normal mental status examinations once Plaintiff stabilized after a relapse. Tr. 982-92. Dr. Chaudhry's opinion suffers from the additional deficit that it is non-specific as to functional limitations, addressing little beyond the ultimate issue of disability. In light of these inconsistencies between their opinions and their clinical observations, I find that these treating source opinions do not undermine the ALJ's reliance on Dr. Gitlow's very different conclusion regarding the materiality of substance abuse or functionality in the absence of substance abuse.

Returning at last to the second issue framed by this administrative appeal – whether any treating source was entitled to controlling weight – I find that the same analysis yields the answer. That is, I find no error in the ALJ's determination that the treating sources (Drs. Calvert and Chaudhry) were entitled only to minimal, not controlling, weight. See Keating, 848 F.2d at 275-76.

Based on the foregoing, I find that Dr. Gitlow's opinion amounted to substantial evidence sufficient to support the ALJ's finding that Plaintiff does not have a severe mental impairment in the absence of substance abuse. Finding no error, I recommend that the Court affirm the ALJ's decision.

## VII.   CONCLUSION

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 8, 2017